CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ANNE C. HSIEH (CABN 288159)
AMANI S. FLOYD (CABN 301506)
Assistant United States Attorneys

60 South Market Street, Suite 1200
San Jose, California 95113
Telephone: (408) 535-5596
FAX: (408) 535-5066
Anne.Hsieh@usdoj.gov
Amani.Floyd@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GEOFFREY CHAD GIGLIO,<br><br>Defendant. | Case No. 3:25-CR-00264-VC<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY**<br><br>Hearing Date: October 28, 2026<br>Hearing Time: 2:00 p.m.<br>Courtroom: 3, 17th Floor<br><br>Hon. Vince Chhabria |

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

A. Charges and Investigation ..... 1

B. Proceedings and Discovery ..... 3

III. LAW AND ARGUMENT ..... 6

A. The USCP Materials Are Not Subject to the Government's *Brady* or Rule 16 Obligations ..... 6

B. The Requested USCP Materials Are Not Within the Government's "Possession, Custody, or Control" for Purposes of *Brady* or Rule 16 ..... 8

C. Assuming the USCP Materials Are Within the Government's Possession, the Defense Has Failed to Show Any *Brady* Violation Requiring Its Requested Remedy of Compulsion ..... 12

D. Defense Has Also Failed to Show Any Rule 16 Obligation Requiring Compulsion of the Requested USCP Materials ..... 16

IV. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

*Brady v. Maryland*, 373 U.S. 83 (1963) .......... passim

*Carriger v. Stewart*,
132 F.3d 463–80 (9th Cir. 1997) .......... 7

*Counterman v. Colorado*,
600 U.S. 66 (2023) .......... 14

*Kyles v. Whitley*,
514 U.S. 419 (1995) .......... 7, 9

*Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*,
290 F.3d 1058 (9th Cir. 2002) (en banc) .......... 14

*Sanchez v. United States*,
50 F.3d 1448 (9th Cir. 1995) .......... 7

*Strickler v. Greene*,
527 U.S. 263–82 (1999) .......... 6, 12, 14

*United States v. Aichele*,
941 F.2d 761 (9th Cir. 1991) .......... 8

*United States v. Alahmedalabdaloklah*,
94 F.4th 782 (9th Cir. 2024) .......... passim

*United States v. Bagley*,
473 U.S. 667 (1985) .......... 6

*United States v. Blanco*,
392 F.3d 382–95 (9th Cir. 2004) .......... 15

*United States v. Bryan*,
868 F.2d 1032 (9th Cir. 1989) .......... 7

*United States v. Bundy*,
968 F.3d 1019 (9th Cir. 2020) .......... 15

*United States v. Cano*,
934 F.3d 1002 (9th Cir. 2019) .......... passim

*United States v. Cerna*,
633 F. Supp. 2d 1053 (N.D. Cal. 2009) .......... 11, 12, 18

*United States v. Chon*,
210 F.3d 990 (9th Cir. 2000) .......... 17

*United States v. Cloud*,
102 F.4th 968 (9th Cir. 2024) .......... 14, 15

*United States v. Davenport*,
753 F.2d 1460 (9th Cir. 1985) .......... 12

*United States v. Fort*,
472 F.3d 1106 (9th Cir. 2007) .......... 17

*United States v. Fort*,
478 F.3d 1099 (9th Cir. 2007) .......... 8

*United States v. Gordon*,
844 F.2d 1397 (9th Cir. 1988) .......... 12

*United States v. Jennings*,
960 F.2d 1488 (9th Cir. 1992) .......... 10

*United States v. Lucas*,
841 F.3d 796 (9th Cir. 2016) .......... 13, 15

*United States v. Mandel*,
914 F.2d 1215 (9th Cir. 1990) .......... 16

*United States v. Martinez*,
657 F.3d 811 (9th Cir. 2011) .......... 18

*United States v. Mincoff*,
574 F.3d 1186 (9th Cir. 2009) .......... 13

*United States v. Muniz-Jaquez*,
718 F.3d 1180 (9th Cir. 2013) .......... 7

*United States v. Price*,
566 F.3d 900 (9th Cir. 2009) .......... 8, 12, 14

*United States v. Salyer*,
271 F.R.D. 148 (E.D. Cal. 2010) .......... 11

*United States v. Stever*,
603 F.3d 747 (9th Cir. 2010) .......... 7

*United States v. Wolfenbarger, Case No. 16-CR-00519-LHK-1*,
2019 U.S. Dist. LEXIS 115764, 2019 WL 3037590 (N.D. Cal. July 11, 2019) .......... 17

*United States v. Wood*,
57 F.3d 733 (9th Cir. 1995) .......... 11

*United States v. Zuno-Arce*,
44 F.3d 1420 (9th Cir. 1995) .......... 9

*Weatherford v. Bursey*,
429 U.S. 545 (1977) .......... 6

## I. INTRODUCTION

The United States respectfully requests that the Court deny Defendant Geoffrey Chad Giglio's motion to compel the following documents from the United States Capitol Police (USCP):

> (1) Any determinations or statements that communications by Mr. Giglio do not constitute true threats, are not criminal in nature, or are not particularly serious. Any internal communications within USCP regarding supervisory review of Mr. Giglio's communications or threat level. Any notes, discussions, or other documentation related to the same.
>
> (2) Any communications by USCP to Mr. Giglio to discuss his contact with Mr. Swalwell's regional office or to ask him to cease contacting the office.

The defense fails to demonstrate any basis—either under *Brady* or Rule 16—to compel the production of the above-requested materials from USCP. First and foremost, USCP is not part of the prosecution team, and the requested materials are not within the possession of the government for purposes of *Brady* and Rule 16. While USCP independently received reports of the same offenses charged here and conducted its own preliminary threat assessment, it did so entirely separately from and unrelated to the government's investigation that led to the charges in this case. Other than subsequently providing the government limited materials in response to the government's discovery requests, USCP did not participate in the government's investigation or act on the government's behalf in this case, and instead has refused to turn over requested evidence at times. As such, the prosecution cannot be deemed to have access to and knowledge—let alone "possession" of the information under USCP's control. Second, even assuming the requested USCP materials are in the government's possession, the defense fails to show they constitute favorable and material evidence under *Brady*, or evidence material to the defense under Rule 16. Accordingly, they should not be compelled pursuant to any *Brady* or Rule 16 obligation.

## II. BACKGROUND

### A. Charges and Investigation

Defendant Geoffrey Chad Giglio ("Giglio") is currently scheduled to proceed to a jury trial on December 1, 2026, on the four counts charged against him in the above-captioned case involving the following offenses: Influencing a Federal Official by Threat in violation of 18 U.S.C. § 115 (Counts One

and Four), Communicating a Threat in violation of 18 U.S.C. § 875 (Count Two), and Anonymous Telecommunications Harassment in violation of 47 U.S.C. § 223(a)(1)(C) (Count Three). The charges against Giglio stem from two phone calls that Giglio made, one in March 2025 and the other in June 2025, to the Castro Valley, California district office of now-former United States Representative Eric Swalwell ("Congressman Swalwell"), in which Giglio communicated harassing and threatening messages towards Congressman Swalwell and his staff. Floyd Decl. ¶ 3.

On March 27, 2025, Giglio left two voicemails for Congressman Swalwell at his Castro Valley district office. *See id.* ¶ 4. The voicemails were forwarded to and reviewed by members of Congressman Swalwell's staff, including his District Director and his Strategic Advisor on the Constitution and Law Enforcement ("Law Enforcement Advisor"). *Id.* The next day, on March 28, 2025, Congressman Swalwell's Law Enforcement Advisor reported the voicemails to the House Congressional Sergeant at Arms via an internal security portal. *Id.* ¶ 5. That same day, the report made its way to USCP for an initial threat assessment. *Id.* ¶ 6. As part of that initial assessment, on or about April 1, 2025, USCP confirmed the identity of the caller, issued a face sheet for Congressman Swalwell's office, and declined further investigation or other action. *Id.* ¶ 7.

Separately, the FBI in Michigan initiated a threat assessment of Giglio based on a threatening voicemail that Giglio left for Michigan Secretary of State Jocelyn Benson at her Executive Office on March 25, 2025. *Id.* ¶ 8. At the time, the FBI believed that Giglio was residing in Sebastian, Florida and transferred its threat assessment to the FBI field office in Miami. *Id.* ¶ 9. As part of FBI Miami's threat assessment, agents determined that Giglio was no longer living in Florida and that he had relocated to California. *Id.* ¶ 10. On June 13, 2025, as FBI Miami's threat assessment continued, Giglio made another call to Congressman Swalwell's Castro Valley district office, telling an intern: "Tell Eric Swalwell that we are coming and that we are going to handle everyone. We are going to hurt everyone. We are coming to hurt them. Goodbye." *Id.* ¶ 11. Like before, Congressman Swalwell's staff reported Giglio's communication to the Congressional Sergeant at Arms via the congressional security portal, and it eventually made it way to USCP, resulting in an incident report that captured both the March 2025 and June 2025 communications, but no further action by USCP. *Id.* ¶ 12.

In June 2025, FBI Miami learned of Giglio's June 2025 communication to Congressman Swalwell's office and contacted the FBI Los Angeles field office since that was where Giglio was living at the time. *Id.* ¶ 13. FBI Miami's threat assessment, which was based on Giglio's threatening communication to Michigan Secretary of State Benson, was then transferred to the FBI Los Angeles and combined with a threat assessment arising from Giglio's threatening communications to Congressman Swalwell in March and June 2025, resulting in the charges in this case. *Id.* ¶¶ 14-15.

**B. Proceedings and Discovery**

Giglio was originally charged on June 27, 2025 in the Central District of California via criminal complaint. However, the complaint was dismissed without prejudice and Giglio was charged in the instant case in the Northern District of California via criminal complaint on July 21, 2025. Dkt. 1. The Information in the instant case was filed on August 28, 2025. Dkt. 8.

Giglio made his initial discovery request on July 30, 2025, and additional requests on March 2, 2026, and April 16, 2026. Floyd Decl. ¶ 17. The government responded with productions on September 19, 2025, March 24, 2026, and rolling productions thereafter. *Id.* ¶ 18.

Of note, in its March and April 2026 discovery requests, the defense requested, amongst other things, material and information from USCP. *Id.* ¶ 19. In response, the government forwarded the defense discovery requests to relevant government agencies (including the United States House of Representatives General Counsel's Office, the FBI, and USCP), engaged in additional calls and communications with the defense to clarify its requests, and conducted additional investigation and searches to obtain any information responsive to the defense discovery requests. *Id.* ¶ 20. In May 2026, the case was reassigned to the current AUSAs, who continued contacting agencies for information and material responsive to the defense discovery requests. *Id.* ¶¶ 2, 20. The government has since provided to the defense any information it has received or obtained from other agencies in response to the defense discovery requests. *Id.* ¶ 20.

With regard to USCP in particular, the government transmitted verbatim the following defense discovery request:

> *Please provide information on any communications deemed threatening or harassing other than those by Geoffrey Giglio to Eric Swalwell personally or to his office within six months of March 2025-June 2025. This includes:*

> *a. Records or notes regarding the contents of the communications. b. Internal office emails, text messages, or web-based application messages (e.g. Slack) regarding threatening communications. c. Records indicating which threatening or harassing communications were flagged for law enforcement. d. Law enforcement records indicating whether the persons making the communications were contacted, asked to stop, or prosecuted. What I am requesting is any records/reports deemed threatening to Swalwell or his office from time frame September 1, 2024 through December 31, 2025.*

*Id.* ¶ 21.

On August 13, 2026, the government received from USCP's Office of the General Counsel the following objections to the defense discovery request:

> It is the department's position that in addition to being irrelevant as drafted, the request is:
>
> (1) Overly broad. The request seeks over a year's worth of "threatening or harassing" information received by former Rep. Swalwell's office unrelated to the instant case. Searching for and compiling this information would be unduly burdensome and time consuming.
>
> (2) Law enforcement sensitive information. The request seeks records or notes about threatening communications including which communications were flagged by law enforcement and any action taken, which would reveal investigative techniques.
>
> (3) Information prohibited from disclosure pursuant to 2 USC 1979. Our law enforcement records could and likely will contain security information, that is, information related to the protection of our statutory protectee – (i.e., former Member of Congress Swalwell) which is prohibited from disclosure without USCP Board approval. The request could also require the disclosure of communications between USCP and Swalwell about each of these investigations and USCP's investigative and protective plan.

*Id.* ¶ 22.

USCP General Counsel's Office also explained that, because USCP is an agency of the legislative branch of government (not the executive branch) and did not conduct or participate in the investigation for the charged offenses in this case, USCP is not and should not be considered part of the government prosecution/investigative team in this case for any purpose. *Id.* ¶ 23. The defense disagrees with that position. As a factual matter, the communications charged in this case were initially reported by former Congressman Swalwell's office to the House Sergeant at Arms and then to USCP, which declined further investigation after conducting initial threat assessments and summarizing the communications and related

information in a USCP ROI (report of investigation). The same communications were subsequently reported to and investigated separately by the FBI, eventually leading to the charges in this case. *Id.* ¶ 15. As a result, the government (meaning, the prosecution/investigation team) has experienced difficulties obtaining from USCP material responsive to both government and defense requests for discovery.

After receiving USCP's objections on August 13, 2026, the government shared the USCP email with the defense and asked the defense if it could (1) provide its threshold showing of materiality to the defense, as required under Rule 16, and (2) narrow its request to address USCP's objections on overbreadth and other concerns. *Id.* ¶ 24. Defense counsel thereafter agreed to accept discovery with statutorily-required redactions and to seek a narrower time-range of communications—from one month before and after the charged offenses—which the government then conveyed to USCP. *Id.* ¶ 25.

On October 5, 2026, USCP General Counsel's Office sent an email stating that it had "conferred with USCP officers regarding [the Defense request for "any communications deemed threatening or harassing" from persons other than Mr. Giglio reported by former Rep. Eric Swalwell's office to the United States Capitol Police] and obtained the following summary" of information it could share, which the email then listed. *Id.* ¶ 26. The email continued:

> As to further substantive information regarding these communications (i.e. the communications themselves, which I understand to be the thrust of the Defense request), the position of the United States Capitol Police is that we are unable to legally disclose further information regarding these four communications absent a court order for the reasons set forth in Ms. Walters e-mail dated August 13, 2026. Although we do not believe these records are relevant to Mr. Giglio's guilt or innocence for the acts charged in the present case, USCP would not object to an appropriately tailored order to disclose USCP reports relating to one or more of the above four communications, or to disclose the communication(s) themselves, and will promptly comply with one if and when issued.

*Id.*

Subsequently, the parties stipulated to a Court order compelling USCP to disclose the communications noted in its email to which it "would not object," which was signed on October 9, 2026, and served by the government on USCP. *Id.* ¶ 28.

After receiving the above email from USCP, the government conveyed the above information to

the defense,[1] and stated it was willing to stipulate to a court order compelling USCP to disclose the underlying communications mentioned in the USCP email, so long as the defense provided its required threshold showing of materiality sufficient to trigger discovery obligations under Rule 16(a)(1)(E)(i). *Id.* ¶ 27. On October 6, 2026, the defense responded as follows: "The materiality is that Mr. Giglio's statements must be considered in their full context according to caselaw, and other similar statements are a part of that context. Law enforcement and listener response is also part of that context and relevant to the true threat analysis." *Id.*

## III. LAW AND ARGUMENT

### A. The USCP Materials Are Not Subject to the Government's *Brady* or Rule 16 Obligations

In *Brady v. Maryland*, the Supreme Court recognized a due process obligation of the prosecution to disclose evidence in its possession that is "favorable to the accused" and "material either to guilt or to punishment." 373 U.S. 83, 87 (1963); *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 844 (9th Cir. 2024) ("Under Brady, the Government must produce to the defense exculpatory or impeaching evidence in the prosecutor's possession."). "There is," however, "no general constitutional right to discovery in a criminal case, and *Brady* did not create one[.]" *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). To establish a *Brady* violation, the defense must show "three components": "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the [government], either willfully or inadvertently; and [3] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). For *Brady* purposes, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Separately, Federal Rule of Criminal Procedure 16 obligates the prosecution to provide the defendant, upon request, documents that are "within the government's possession, custody, or control" and "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). To trigger the government's Rule

---

[1] In response to USCP's email, the government also immediately informed USCP that the correct date range for the defense discovery request should be February 1, 2025 to July 31, 2025, and asked USCP to search its files based on the corrected date range. On October 19, 2026, USCP responded that it had conducted the search for the corrected date range and found no additional files responsive to the request.

16(a)(1)(E) discovery obligation, the defendant "must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183–84 (9th Cir. 2013) (quoting *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010)). Because "[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense," Rule 16 is "broader than *Brady*." *Id*. at 1183.

"Under both *Brady* and Rule 16, the government 'has no obligation to produce information which it does not possess or of which it is unaware.'" *United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019) (quoting *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995)); *see also id.* at 1023 n.16 ("The 'possession' element of Brady is treated as coextensive with that of Rule 16."). For *Brady* purposes, however, a "prosecutor's actual awareness (or lack thereof) of exculpatory evidence in the government's hands . . . is not determinative of the prosecution's disclosure obligations" as "the prosecution has a duty to learn of any exculpatory evidence known to others *acting on the government's behalf*." *Carriger v. Stewart*, 132 F.3d 463, 479–80 (9th Cir. 1997) (citing *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)) (emphasis added).

Accordingly, the Ninth Circuit has held that information is deemed within the "possession" of the government "if it is held by members of the prosecution team, such as investigating agents, or if it is held by other executive branch agencies and the prosecutor has 'knowledge of and access' to the evidence." *Alahmedalabdaloklah*, 94 F.4th at 844 (citations and internal quotation marks omitted). In the same vein, the prosecutor "will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). This presumption, however, has important limits. For one, the presumption extends only to the specific components of a federal agency that participated in the investigation, not the entire agency at large. *See Alahmedalabdaloklah*, 94 F.4th at 844–45 (holding that "the Government did not have 'access to' the entirety of DoD merely because it had the ability to send queries to CENTCOM"). Additionally, the prosecution is not necessarily deemed to have "knowledge of or access to anything generated by a state or local actor that is not *actually* known by and in the possession

of the prosecutor." *United States v. Fort*, 478 F.3d 1099, 1100 (9th Cir. 2007) (Graber, J., concurring in denial of reh'g en banc) (clarifying "Fort establishes no principle of constructive possession," but "holds only that evidence gathered by state and local actors becomes subject to the disclosure obligation established by Rule 16 when it passes into federal possession for the purposes of a federal prosecution of the same defendants for the same acts that were initially subject to the state or local investigation.").

Ultimately, this Court must apply "a 'case-by-case approach' to determine whether the prosecution had the requisite knowledge and access" to trigger its *Brady* or Rule 16 obligation. *Alahmedalabdaloklah*, 94 F.4th at 845 (quoting *Cano*, 934 F.3d at 1025). As the Ninth Circuit has recognized, such a case-specific approach "makes sense" because "non-participating agencies may have valid concerns over revealing sensitive information in cases wholly unrelated to the agencies' own area of expertise, and 'the agencies may be reluctant to cooperate in a particular investigation if it means opening their files in other investigations.'" *Id.* (quoting *Cano*, 934 F.3d at 1025). As the Ninth Circuit has found in some cases, the government does not have a duty to obtain and turn over materials in the control of state agencies, private parties, or other independent entities to which the prosecution team lacked access. *See, e.g.,* U*nited States v. Aichele,* 941 F.2d 761, 764 (9th Cir. 1991) (finding that the prosecution did not violate Brady for failing to turn over impeachment material relating to a government witness that was contained in the California Department of Corrections file because the file was under the control of state officials). Furthermore, the Ninth Circuit has squarely held that "the prosecutor should not be held to have 'access' to any information that an agency not involved in the investigation or prosecution of the case refuses to turn over." *Cano*, 934 F.3d at 1026.

### B. The Requested USCP Materials Are Not Within the Government's "Possession, Custody, or Control" for Purposes of *Brady* or Rule 16

"The proponent of a *Brady* claim—i.e., the defendant—bears the initial burden of producing some evidence to support an inference that the government *possessed or knew about material favorable to the defense* and failed to disclose it." *United States v. Price*, 566 F.3d 900, 910 (9th Cir. 2009) (emphasis added). Giglio fails at the outset to establish any *Brady* or Rule 16 discovery obligation because the USCP materials he seeks to compel are neither known to the government nor within its possession, custody, or

control for *Brady*/Rule 16 purposes.

In this case, USCP should not be deemed a member of the prosecution team, given its independent role and lack of participation in the specific federal investigation that led to the charges. The defense's contrary argument rests on USCP's receipt of the March 2025 report from Congressman Swalwell's office, its preliminary threat assessment, and its later communications with the FBI. Mot. 6. But these facts alone do not transform USCP into a member of the prosecution team for *Brady* or discovery purposes, where USCP has never acted "on the government's behalf in the case," *Kyles*, 514 U.S. at 437, nor participated in the FBI's investigation or in this prosecution. USCP's threat assessment was its own, conducted for its own protective purposes and separate from the FBI investigation that led to the charges here. That USCP later provided the FBI with copies of the voicemails it received, and informed FBI that none of the communications on file with USCP had been deemed criminal, Mot. 2–3, shows only that USCP—like the congressional office itself—was a source of evidence for the government's investigation, not an active participant.

The cases imposing a "duty to learn" on the prosecutor "involve independent federal agencies that had participated in the investigation of the defendant." *Cano*, 934 F.3d at 1026. "As to those agencies that are not involved in the investigation, the 'prosecutor need not comb the files of every federal agency which might have documents'; rather, the obligation to disclose 'turn[s] on the extent to which the prosecutor has knowledge of and access to the documents.'" *Alahmedalabdaloklah*, 94 F.4th at 844 (citing *United States v. Zuno-Arce*, 44 F.3d 1420, 1427 (9th Cir. 1995)). Because USCP did not act on the government's behalf in the investigation or prosecution of this case, the government's "duty to learn" under *Brady* does not extend to USCP files to which the government lacks access.

Nor does the fact that USCP eventually provided the government limited materials give the prosecution "knowledge of and access to" everything else in USCP's files. The Ninth Circuit has "occasionally presumed that a prosecutor has access to an agency's files where the prosecutor actually obtained inculpatory information from the agency, even if the agency was not involved in the investigation or prosecution," *Cano*, 934 F.3d at 1024–25 (citation omitted); however, that presumption does not apply here for two reasons. First, this presumption of access extends to information "held by other executive

branch agencies," *Alahmedalabdaloklah*, 94 F.4th at 844, based primarily on the presumed relationships between agencies in the same branch of government. *See Santiago*, 46 F.3d at 894 ("[T]he fact that the Bureau of Prisons and the United States Attorney's Offices are both branches of the Department of Justice would facilitate access by federal prosecutors to prison files."); *United States v. Jennings*, 960 F.2d 1488, 1490 (9th Cir. 1992) (prosecutor's responsibility "cannot be evaded by claiming lack of control over the files or procedures of other executive branch agencies"). USCP, by its own account, is a legislative branch agency, over which the Department of Justice has no authority. Floyd Decl. ¶ 23. Second, the Ninth Circuit has made clear that the presumption of access gives way when the agency declines to produce. A prosecutor lacks "access" to information that an uninvolved agency "refuses to turn over," *Cano*, 934 F.3d at 1026, and the government lacks access where, as here, "the prosecution team was relegated to requesting [the agency's] assistance to obtain any responsive materials," *Alahmedalabdaloklah*, 94 F.4th at 844–45.

As evidenced in this case, USCP has consistently viewed and held itself as a wholly independent agency from the government team without any legal responsibility for or vested interest in the investigation underlying the prosecution in this case. According to USCP, it is a legislative agency, not an executive one, and it did not participate in the federal investigation of this specific case. In fact, USCP has been less than cooperative at times with the government team, often invoking its own legislative agency concerns with disclosing sensitive information, and agreeing only to provide summarized, redacted, or otherwise limited information in response to the government's requests for discovery. For example, since the charging of this case in 2025, the government has submitted multiple requests to USCP for the same information (requesting law enforcement reports in USCP's possession pertaining to other threatening communications made by Giglio) to little avail. After a year of delay, lack of response, then escalation of the matter to the USCP General Counsel, the government finally received a redacted, 42-page document summarizing only a handful of incidents within a narrowed timeframe that USCP deemed appropriate for disclosure. Similarly, in response to the government's transmission of the defense's discovery requests, USCP first responded with written objections, then after the request was narrowed, it finally provided an email summarizing the information it had located responsive to the request, but requiring a Court order for further discovery. Under these facts, the prosecution does not have "access"

to USCP materials that USCP itself has declined to produce without a court order. *See Cano*, 934 F.3d at 1026 ("[T]he need for formal process in the acquisition of documents [from another agency] is the antithesis of 'access.'" (quoting United States v. Salyer, 271 F.R.D. 148, 156 (E.D. Cal. 2010))); *Alahmedalabdaloklah*, 94 F.4th at 844–45.

Giglio's authorities do not hold otherwise and are entirely distinguishable. In *Wood*, the Court considered the FDA part of the prosecution team for *Brady* purposes, where the FDA was: "the agency charged with administration of the statute, which had consulted with the prosecutor in the steps leading to prosecution"; the agency victim of the charged offense (conspiracy to defraud the FDA), and "the agency interested in the prosecution" that provided the government's key witness and evidence at trial, while holding "in its files information favorable to the defendant." *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995). None of those facts in *Wood* apply here. USCP does not administer the charged statutes, nor is it a victim of the charged offenses. It certainly did not consult "with the prosecution in the steps leading to the charges in this case," nor expressed any interest in the prosecution of this case; instead, it declined to conduct further investigation or refer the case for prosecution after completing its initial threat assessment. Floyd Decl. ¶ 7. The out-of-circuit district court decisions Giglio cites, *Nichols* and *Bingert*, Mot. 6, are also clearly inapt here, given those were both cases in which USCP was the investigative agency for the government. Neither decision suggests that USCP becomes part of the prosecution team whenever a threatening communication is first reported to it.

The government recognizes that, in a different case in which USCP acted as the lead or a joint investigative agency, information in USCP's control could be subject to the government's *Brady* obligations. That is not this case. Based on the specific facts here, it is clear that the prosecution team has no access to, or even knowledge of, any files or information in USCP's possession that might be responsive to the defense's motion to compel.

Finally, it is worth noting the government's diligence in seeking out favorable information from USCP, despite the government's lack of access to the agency's files. When an outside agency allows the prosecution to request records, the prosecution's obligation is to "ask for all information on the same subject, pro and con." *United States v. Cerna*, 633 F. Supp. 2d 1053, 1060 (N.D. Cal. 2009). That

obligation does not "translate to a federal obligation to scour the entirety of [the agency's] storerooms looking for defense evidence." *Id.* The government did what *Cerna* contemplates: it transmitted the defense's own discovery requests to USCP, pressed for a response, and produced to the defense everything USCP provided. Floyd Decl. ¶ 20. To the extent potential defense evidence remains with USCP, *Cerna* recognized that the gap "can be at least partially solved by Rule 17 subpoenas so long as their scope is narrowly directed and reasonable." *Id.* Indeed, the parties have already stipulated to an order directed to USCP for certain information that both sides had requested. *See* Mot. 3 (citing Dkt. 58).

### C. Assuming the USCP Materials Are Within the Government's Possession, the Defense Has Failed to Show Any *Brady* Violation Requiring Its Requested Remedy of Compulsion

To be clear, there has been no *Brady* violation by the government in this case, whether with regard to the USCP materials already disclosed or the USCP materials Giglio now seeks to compel. Here, Giglio fails on all three prongs of his *Brady* claim—suppression, favorability, and materiality.

#### *1. No* Brady *Suppression*

To the extent Giglio suggests that the government violated *Brady* based on its prior disclosures of the emails from USCP to the government, the Court should squarely reject that claim. Even assuming those emails constitute *Brady* material, the defense has clearly failed to show suppression sufficient to violate *Brady*. *Price*, 566 F.3d at 907 ("[I]n order for a Brady violation to have occurred, the evidence at issue 'must have been suppressed by the State.'" (quoting Strickler, 527 U.S. at 281)). These documents were not suppressed because they were produced to the defense well in advance of trial. Indeed, the government has turned over every document it has received from USCP to the defense, and even made proactive efforts to assist the defense with its discovery requests to USCP. Furthermore, to the extent Giglio complains they were untimely disclosed, he is wrong. "*Brady* does not necessarily require that the prosecution turn over exculpatory material *before* trial." *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988) (emphasis in original). Rather, "[t]o escape the *Brady* sanction, disclosure 'must be made at a time when [the] disclosure would be of value to the accused.'" *Id.* (quoting *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985)). "If the defendant is presented with a substantial opportunity to use the belatedly disclosed evidence, there is no prejudice." *Alahmedalabdaloklah*, 94

F.4th at 828. The government produced the USCP emails on September 25, 2026, more than two months before the December 1, 2026 trial date. Mot. 2. Giglio has had them ever since, has built this motion around them, and will have every opportunity to use them at trial. There has been no suppression.

#### *2. Giglio Has Not Shown That the Requested Materials Exist or Are Favorable and Material Under* **Brady**

As to the specific information that the defense currently seeks to compel in its motion, it fails to show that the requested information exists, or that it would be "favorable" and "material" under *Brady*, even if it were in the government's possession.

To obtain an order compelling the government to search for and produce additional *Brady* material, a defendant "must do more than speculate that *Brady* material exists." *United States v. Lucas*, 841 F.3d 796, 809 (9th Cir. 2016); *see also id.* at 808 ("'[M]ere speculation about materials in the government's files' [does] not require the district court to make those materials available, or mandate an in camera inspection." (quoting United States v. Mincoff, 574 F.3d 1186, 1200 (9th Cir. 2009))). Here, Giglio fails to carry his threshold burden of showing that favorable evidence exists. Giglio already has the USCP statements on which his motion is built: the April 1, 2025 email stating that "the content of these calls do not meet the threshold to be considered a true threat, but are concerning, none the less," and the January 6, 2026 email stating that "[n]one of the communications on file with USCP were deemed criminal in nature." Mot. 2–3. From those two statements, Giglio hypothesizes that USCP must also hold additional "determinations or statements," "internal communications within USCP regarding supervisory review," and "notes, discussions, or other documentation related to the same." Mot. 7. But he identifies no fact suggesting that any such material exists, much less that it says anything different from what he already has. Like the defendant in *Lucas*, Giglio "cannot point to any existing favorable evidence to support his speculation" and instead "asserts that he is entitled to more information to prove his suspicions." 841 F.3d at 802. That is not enough.

Nor would the materials Giglio seeks be favorable in the way he claims. The objective component of the true-threat inquiry asks whether "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to

harm or assault." *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1074 (9th Cir. 2002) (en banc) (internal quotation marks omitted); *see* Mot. 4. The existence of a threat depends "on 'what the statement conveys' to the person on the other end." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023). That is the reasonable-person standard that the jury must apply to Giglio's statements in their full context. It does not turn on whether a law enforcement agency that did not receive the calls concluded that the calls did not met whatever internal "threshold" the agency applies in deciding how to proceed. And the subjective component, which requires proof "that the defendant had some understanding of his statements' threatening character," *id.* at 73, turns on Giglio's own state of mind. USCP's internal assessments say nothing about that. Moreover, the record Giglio himself describes shows that the recipients and USCP took the calls seriously. The congressional office reported them to law enforcement, the very USCP email Giglio relies on described the calls as "concerning," and USCP gave the office a photo sheet of Giglio directing staff to contact USCP if he made other concerning communications. Mot. 2, 6. Any additional internal USCP discussion of the same calls would, at most, be cumulative of the statements Giglio already has.

In any event, Giglio fails to demonstrate that the requested USCP information would be "material" under *Brady*. While the government has a "broad pretrial duty" to disclose information "favorable to the defense," *United States v. Cloud*, 102 F.4th 968, 980 (9th Cir. 2024), a failure to disclose favorable information does not violate *Brady* without a showing of materiality or prejudice. *See Strickler v. Greene*, 527 U.S. 263, 281 (1999) ("[The term '*Brady* violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence—that is, to any suppression of so-called '*Brady* material'—although, strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."); *Price*, 566 F.3d at 913 n.14 ("[J]ust because a prosecutor's failure to disclose evidence does not violate a defendant's due process rights does not mean that the failure to disclose is proper." (internal quotation marks and citation omitted)). Where a *Brady* allegation is raised prior to or mid-trial, materiality is not evaluated by the traditional "retrospective evaluation of how the disclosure may have impacted the outcome of a trial that has not yet concluded," but by evaluating the impact of the withheld

or late-disclosed "evidence in light of the proceedings to date." *Cloud*, 102 F.4th at 980. Under this pretrial materiality inquiry, a court "should evaluate the relative value of the withheld evidence 'on the basis of the indictment, the pretrial proceedings, the opening statements, and the evidence introduced up to that point,'" and consider whether timely disclosure "might have altered the prosecution or defense strategy." *Id*. (quoting *United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020), and citing *id.* at 1044).

Here, Giglio fails to demonstrate the materiality of the withheld USCP information in terms of altering his defense strategy or otherwise prejudicing him in light of the proceedings to date. With regard to item 1—To the extent that Giglio's true-threat defense depends on the USCP statements on which his motion relies, he already received them months before trial, with sufficient time to develop his defense around them. *See* Mot. 4–5. Additional internal "determinations or statements" by USCP personnel (if they exist)—especially those pertaining to other uncharged communications by Giglio--would only be cumulative at best. Giglio does not explain how such cumulative evidence (assuming its existence) materially affects or alters his trial preparation or defense strategy. *Cf. Sedaghaty*, 728 F.3d at 900 (finding materiality where the withheld impeachment evidence was not "cumulative or marginal"); *Cloud*, 102 F.4th at 980 (finding materiality where the withheld evidence "was not simply garden-variety impeachment" but "blockbuster evidence from an eyewitness" that "would definitely have shaped the defense strategy"). As for item 2—"[a]ny communications by USCP to Mr. Giglio to discuss his contact with Mr. Swalwell's regional office or to ask him to cease contacting the office," Mot. 7—Giglio offers no explanation of how such communications (if they exist) would be exculpatory or impeaching, let alone material, and none is apparent.

Finally, because there has been no *Brady* violation, there is no basis for the prophylactic remedy Giglio seeks. His reliance on *Blanco* is misplaced. The Ninth Circuit ordered "full disclosure" there only "where the defendant showed that the government had suppressed *Brady* material concerning that witness." *Lucas*, 841 F.3d at 808 (citing *United States v. Blanco*, 392 F.3d 382, 392–95 (9th Cir. 2004)). Giglio has made no such showing. Where no recognized right has been violated, "there is no need for the district court to provide any remedy," and "the presumption is that official duty will be done." *Jennings*,

960 F.2d at 1492. The government understands its continuing disclosure obligations and will promptly produce any favorable information it receives from USCP, including any information produced pursuant to the parties' stipulation. *See* Dkt. 58.

**D. Defense Has Also Failed to Show Any Rule 16 Obligation Requiring Compulsion of the Requested USCP Materials**

Even if the Court finds that the requested USCP information is within the government's "possession, custody, and control" for Rule 16 purposes, Giglio still fails to "make a showing of materiality of the information sought" as required for production under the Rule. *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995). To obtain discovery under Rule 16(a)(1)(E), "[a] defendant must make a threshold showing of materiality, which requires a presentation of 'facts which would tend to show that the Government is in possession of information helpful to the defense.'" *Id*. (quoting *United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir. 1990)). "Neither a general description of the information sought nor conclusory allegations of materiality suffice." *Mandel*, 914 F.2d at 1219.

In *Santiago*, for example, the Ninth Circuit found insufficient the defense counsel's claims "that because the government planned to introduce testimony of gang affiliations, he would need to know for impeachment purposes whether any inmate witnesses were linked to rival gangs, and that any evidence from prison files on affiliation would be critical." *Santiago*, 46 F.3d at 894. According to the Court, "[t]hese assertions, although not implausible, do not satisfy the requirement of specific facts, beyond allegations, relating to materiality," and were only "'conclusory allegations' without grounding in fact." *Id*. at 894–95 (quoting *Mandel,* 914 F.2d at 1219). Although the defense in *Santiago* had access to other documents relating to the government's witnesses and had interviewed other inmates, "it did not cite any fact, such as a statement by the defendant or one of the interviewed witnesses, that might link one of the witnesses to a rival gang." *Id.* at 895.

Here, Giglio fails to make any sufficient showing as to how the requested USCP material is material to his defense. Indeed, Giglio's motion appears to make zero showing of Rule 16 materiality based on "specific facts," making only the conclusory allegation that, "[t]he discovery requested here is not only material, some of it may well contain *Brady* material . . . ." Mot. 7. Even if the Court generously

construes Giglio's *Brady* favorability arguments as his implicit showing of Rule 16 materiality, the assertions still fail to satisfy his burden under Rule 16. With regard to item 1, the defense makes the general conclusory argument that such "determinations by investigating law enforcement agents" would "obviously undermine[] the government's" true threat theory. Mot. 4. However, this argument still does not sufficiently explain, with "grounding in fact," why the breadth of information requested in item 1—which extends to "any determinations or statements" pertaining to Giglio's communications, and not just the ones charged in this case, as well as any "internal communications," "notes, discussions, or other documentation related to the same"—is material to defense preparation. The same applies to item 2, for which Giglio provides no explanation as to why "communications by USCP to Mr. Giglio to discuss his contact with Mr. Swalwell's regional office or to ask him to cease contacting the office" is material to the defense. Rule 16 does not permit "far reaching fishing expedition[s]" whereby defendants can seek a range of materials "'considerably broader' than any materials relevant to the charges against the defendants." *United States v. Wolfenbarger*, Case No. 16-CR-00519-LHK-1, 2019 U.S. Dist. LEXIS 115764, 2019 WL 3037590, at *9 (N.D. Cal. July 11, 2019) (quoting *United States v. Chon*, 210 F.3d 990, 994-95 (9th Cir. 2000)).

Furthermore, even if otherwise discoverable under Rule 16(a)(1)(E), much of the requested USCP material would be subject to the work-product exemption of Rule 16(a)(2), which prohibits "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2) ("Information Not Subject to Disclosure"). According to the Ninth Circuit, "Rule 16(a)(2) is best read to create symmetry between the disclosure obligation [in Rule 16(a)(1)(E)] and the exception to that obligation." *United States v. Fort*, 472 F.3d 1106, 1118 (9th Cir. 2007). Consequently, "investigative reports created by state police officers and turned over to federal prosecutors to support a unified federal prosecution of defendants should be considered reports 'made by an . . . other government agent in connection with investigating or prosecuting the case'" and therefore qualify for exemption under Rule 16(a)(2). *Id*. at 1118. Applied here, if USCP is a member of the government for Rule 16 discovery purposes, then any of its "internal communications," "notes, discussions, or other documentation"

constituting attorney or agent work product "in connection with investigating or prosecuting" this case would also be exempted from discovery by Rule 16(a)(2)—in the same way that the Rule protects "the internal product of local police work later provided to the federal government." *United States v. Martinez*, 657 F.3d 811, 819 (9th Cir. 2011).

In sum, there is no basis—either under *Brady* or Rule 16—to compel production of the materials demanded in the defense's motion to compel. The materials are clearly not within the Government's possession, either for *Brady* or Rule 16 purposes and even if they were, Defense has failed to show that they are favorable and material under *Brady* or material under Rule 16. Furthermore, should Defense still deem this information necessary to its preparation, it can exercise its own discovery rights, such as through the request and issuance of a Rule 17 subpoena. *See Cerna*, 633 F. Supp. 2d at 1060. However, "*Brady* and Rule 16 are not a means for a defendant to require the prosecutor to do this work for him." *Cano*, 934 F.3d at 1026. At this stage, given the defense's failure to meet its burden, the Court should deny the motion to compel.

## IV. CONCLUSION

For the reasons above, this Court should deny Giglio's motion to compel the requested USCP discovery.

DATED: October 20, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
ANNE C. HSIEH
AMANI S. FLOYD
Assistant United States Attorneys